THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TYSON FOODS, INC., <br>     A Foreign Corporation, <br><br>          Plaintiff, <br><br> vs. <br><br> (1) ROUTH ENTERPRISES, INC, <br>     An Oklahoma Corporation, and <br><br> (2) EMCASCO INSURANCE COMPANY, <br>     A Foreign Corporation, <br><br>          Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CIV-14-cv-279-SPS <br> ) <br> ) Jury Trial Demanded <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff, Tyson Foods, Inc. hereby sets forth its causes of actions and claims for relief against Defendants, Routh Enterprises, Inc. and EMCASCO Insurance Company, and states:

### I. JURISDICTION AND VENUE

1.      Plaintiff, Tyson Foods, Inc. ("Tyson") is a Delaware corporation with its principal place of business in Springdale, Arkansas.

2.      Defendant, Routh Enterprises, Inc. ("Routh") is an Oklahoma corporation with its principal place of business in McCurtain County, Oklahoma.  Routh may be served through its Registered Agent, Dwain Pollard, CPA, 119 N. Central, Idabel, Oklahoma  74745.

3.      Defendant, EMCASCO Insurance Company ("EMC") is an Iowa corporation, with its principal place of business in Des Moines, Iowa.  EMC may be served through its Registered Agent, Richard W. Hoffmann, General Counsel, at 717 Mulberry Street, Des Moines,

IA 50309. EMC is registered with the Oklahoma Department of Insurance to do business within, and has done business within the State of Oklahoma.

4. There is complete diversity of citizenship between the parties, and Tyson seeks to recover on its claims from Defendants jointly and severally an amount in excess of $75,000 exclusive of interest and costs. Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).

5. Tyson's claims against Routh arise from a contract for services entered between Tyson and Routh for Routh to provide construction services at Tyson's facility in Broken Bow, Oklahoma. Tyson's claims against EMC arise from a contract of insurance between EMC and Routh that was entered into in McCurtain County, Oklahoma in which Tyson was named as an additional insured and a covered indemnitee for the aforementioned services Routh provided to Tyson. Furthermore, the incidents that triggered Routh's and EMC's duties to Tyson pursuant to said construction contract and the contract of insurance also occurred in McCurtain County, Oklahoma. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## II.  BACKGROUND FACTS

6. In December 2009, Tyson solicited bids from contractors to perform work at Tyson's Broken Bow, Oklahoma processing plant as part of a major plant reconfiguration.

7. As part of the pre-bid process, Tyson provided each interested bidder a Bid Package including but not limited to, the scope of work, the Contract Documents, plan documents, bid forms, and the specifications.

8. On January 20, 2010, Routh submitted its bid to Tyson to perform a portion of the work identified as the "CSA Scope of Work." Routh's bid was executed by Roger Routh,

President, who certified that if Tyson accepted Routh's bid, Routh would perform all of the obligations set forth in the Bid Package.

9. On January 22, 2010, Tyson accepted Routh's bid for the CSA Scope of Work, and issued to Routh its Purchase Order No. 4506730176.

10. Section 3.1 of Tyson's Traditional Bid Documents and Specifications for the project stated, in part:

> The contract between Tyson Foods, Inc.'s [sic] Subsidiaries ("Tyson") and Contractor shall consist of all provisions contained in the bid package attached hereto, any documents, plans, specifications or codes referred to herein and the terms and conditions stated on and attached to the Tyson Purchase Order issued to successful bidder.

11. Section 3.1 of Tyson's Traditional Bid Documents and Specifications for the project stated, in part:

> …Prior to commencing work on the project, Contractor is required, at its own expense, to provide a copy of a certificate of insurance for the term of this contract acceptable to Tyson Foods, Inc., and its Subsidiaries as follows:
>
> 3.1.1 __Commercial General Liability__ on an occurrence basis, which provides combined single limit in a minimum of $2,000,000 per occurrence with a $2,000,000 aggregate.
>
>    \* \* \*
>
> 3.1.6 Said certificate must state that the Seller's insurer is aware of and agrees to be bound by the indemnity agreement below. Certificate must name Buyer (any subsidiary or affiliated corporation or company, as their interest may appear, and all their directors, officers, employees and agents) as an __additional insured,__ in the General Liability section, for acts to be performed on this project by Contractor, its employees, agents, subcontractors and possible third parties. In addition, the insurance certificate must state it is primary insurance to any other insurance in force and effect.
>
> 3.1.7 Contractor agrees to defend, indemnify, and hold Tyson Foods, Inc. any subsidiary, affiliated corporation or company, as their

>   interest may appear, and all their directors, officers, employees, and agents harmless from and against any and all claims, demands, causes of actions on account of personal injury, death, property damage, injury or damage of any kind or nature that may arise out of the performance hereunder, regardless of available insurance. **Irrespective of whether such claims are actually or allegedly caused through the negligence of Tyson Foods, Inc.'s, its Subsidiaries, any of its agents, or employees.**

(Original emphasis).

12. At all relevant times, the Archey-Warren-Dunn Insurance Agency, Inc. of Broken Bow, Oklahoma was the agent of EMC.

13. On January 21, 2010, Archey-Warren-Dunn Insurance Agency, Inc. supplied Tyson with a Certificate of Liability Insurance for Routh Enterprises, Inc. that stated the following:

>   a. Routh was covered by Commercial General Liability Policy No. 2D18408 issued by Employers Mutual Company with occurrence limits of $1,000,000 and aggregate limits of $2,000,000; and
>
>   b. "Tyson Foods, Inc. is named as additional insured with respect to the General Liability policy."

14. Included within Routh's contract for the CSA Scope of Work with Tyson was installing structural steel and metal roof decking on a new addition to the plant.

15. On March 27, 2010, while installing metal roof decking on the structural steel framing of the new addition, Routh's employee, Avimael Martinez ("Martinez"), fell from the roof framing to the concrete slab below. Because of this accident, Martinez suffered severe and permanently disabling bodily injuries.

16. The post-accident investigation determined that the reason Martinez's fall was not arrested before he contacted the concrete slab below was his failure to tie off the safety line attached to his body harness to the roof structure or a fall protection device. Consequently, Martinez's accident was the direct result of Martinez and Routh failing to adhere to the fall protection requirements set out in Routh's Safety Program, Tyson's Contractor Safety Policy, the Contract, as well as federal and state law.

17. The Scope of Work included within the Contract between Tyson and Routh provides, in part, "[t]he selected firm will take full responsibility for the construction means, methods, techniques, sequences or procedures, or safety precautions and programs."

18. Section 2.2.2 of Tyson's Traditional Bid Documents and Specifications for the project stated, in part:

> Contractor, through its supervisor, shall supervise and direct all work performed and shall be solely responsible for the manner in which work is done. Contractor's supervisor shall ensure proper and safe execution of the work in accordance with the provisions hereof.

19. Tyson lacked both the ability and authority to supervise or control Martinez's actions on the roof framing on March 27, 2010, and therefore, it was fault-free with regard to Martinez's accident.

20. On October 27, 2011, Martinez filed a civil action in the District Court of McCurtain County, Oklahoma against Tyson Chicken, later amended to name Tyson Foods, Inc. as defendant. Martinez alleged that Tyson was in control of the premises, and that as a result of Tyson's failure to exercise ordinary care to ensure that the premises did not present an unreasonable danger to Martinez, Tyson should be held liable to Martinez for damages arising from his injuries.

21. On April 4, 2012, Tyson removed the Martinez lawsuit to the United States District Court for the Eastern District of Oklahoma, Case No. CIV-12-148-RAW.

22. On April 11, 2012, Tyson answered Martinez's claims and filed a Third Party Complaint against Routh asserting its common-law and contractual rights to indemnity and/or contribution.

23. On August 31, 2012, EMC transmitted correspondence to Tyson stating:

As a result of this loss, coverage has been requested under policy number 2D18408. Pursuant to the provisions of the Routh Enterprises' policy of insurance with EMC, EMC will provide Tyson with an attorney, at our expense, to defend Tyson in this matter, subject to reservation.

24. On September 11, 2012, Tyson advised EMC that a conflict of interest would arise if EMC assigned Tyson's defense to the counsel EMC had retained to defend Routh against Tyson's third-party claims, and therefore, EMC must retain separate counsel to handle Tyson's defense.

25. On November 1, 2012, EMC advised Tyson that it "hereby withdraws its previous offer to defend Tyson Foods."

26. On September 4, 2013, Tyson filed its Motion for Summary Judgment in the Martinez lawsuit.

27. On October 30, 2013, the District Court sustained Tyson's Motion for Summary Judgment holding that Tyson was immune from liability for Martinez's claims, and entered Judgment in Tyson's favor. The Court also dismissed Tyson's third-party claims against Routh without prejudice.

28. Between October 2011 when the Martinez lawsuit was filed and October 2013 when the Court granted Judgment to Tyson and terminated the Martinez lawsuit, the parties

conducted significant party and non-party discovery including Tyson's extensive production of hard copy and electronically stored information and numerous depositions, they engaged the services of multiple experts, and filed and responded to multiple motions.

29. In the course of defending Martinez's claims Tyson expended in excess of $200,000 in attorney's fees, expert fees, and costs, all of which should have been born by Routh pursuant to the Tyson-Routh Contract and by EMC due to Tyson's status as an additional insured and an insured indemnitee under EMC's comprehensive general liability policy issued to Routh.

### III. CAUSES OF ACTION

### COUNT I

30. Tyson incorporates the foregoing Paragraph Nos. 1 through 29 as though fully restated herein.

31. The underlying Martinez lawsuit arose out of Routh's performance of the Tyson-Routh Contract, and thus, Routh was bound to defend, indemnify and hold Tyson harmless from Martinez's claims.

32. Routh did not accept Tyson's defense in the Martinez lawsuit, nor has it reimbursed Tyson's fees and costs incurred in its defense. Routh's failure to fulfill its contractual obligation to defend and hold Tyson harmless from Martinez's claims is a breach of the Tyson-Routh Contract.

33. The Tyson-Routh Contract also required Routh to procure commercial liability insurance with the prescribed limits, and to certify that its insurer (EMC) was aware of Routh's indemnity obligations to Tyson, provided coverage for Routh's indemnity obligations to Tyson, and named Tyson as an additional insured under the commercial liability policy.

34. EMC refused to accept Tyson's defense in the Martinez Lawsuit, and has refused to reimburse Tyson's fees and costs incurred in its defense.

35. Routh breached the Tyson-Routh Contract by failing to procure insurance to satisfy its insurance and indemnity obligations thereunder.

36. As a consequence of Routh's breach of contract, Tyson incurred reasonable and necessary defense costs in the Martinez lawsuit in excess of $200,000 that pursuant to the Tyson-Routh Contract, should have been paid by Routh.

## COUNT II

37. Tyson incorporates the foregoing Paragraph Nos. 1 through 36 as though fully restated herein.

38. Through its agent, the Archey-Warren-Dunn Insurance Agency, Inc., EMC provided a Certificate of Insurance to Tyson representing that Tyson was an additional insured party under Routh's policy of insurance.

39. Through its agent, the Archey-Warren-Dunn Insurance Agency, Inc., EMC knew that the Certificate of Insurance it issued to Tyson was for the purpose of Routh contracting for work with Tyson and satisfying Routh's obligations to Tyson to meet and maintain the minimum insurance requirements for the project, to cover Routh's indemnity obligations to Tyson, and to have Tyson specifically listed as an additional insured party for any liabilities arising from Routh's work.

40. Tyson relied reasonably on the Certificate of Insurance issued by EMC in granting the contract to Routh and by allowing Routh to commence work on the project.

41. Despite issuing the Certificate of Insurance, EMC denied that Tyson was an additional insured party under Routh's policy of insurance or that EMC owed any duties to Tyson as an insured indemnitee of Routh, which has resulted in an injustice to Tyson and directly caused Tyson to suffer economic injury.

42. Based on its representations by and through its agent to Tyson, EMC is estopped from denying that Tyson was an additional insured under the contract for commercial general liability insurance issued by EMC to Routh that covered Routh's work on the Broken Bow Plant project in 2010. As such, as an additional insured party and a specifically named third-party beneficiary of the insurance contract, Tyson has the right and authority to enforce terms of Routh's commercial insurance policy and demand EMC's performance thereunder.

43. The Martinez lawsuit alleged an occurrence covered by the EMC policy – namely, bodily injury arising from an occurrence pertaining to Routh's work at the Tyson facility. Further, the acts and omissions of Routh and its employees during the course of the Broken Bow Plant project directly caused Martinez's injuries. The post-accident investigation revealed that Routh's employee fell and was seriously injured as a result of his and his supervisors' failure to adhere to the fall protection requirements contained within the applicable safety policies and as dictated by state and federal law.

44. As an additional insured and third-party beneficiary under the contract for commercial general liability insurance issued by EMC to Routh that covered Routh's work on the Broken Bow Plant project in 2010, EMC owed Tyson the duty to assume and pay for Tyson's defense in the Martinez lawsuit.

45. EMC acknowledged its duty to defend Tyson in the Martinez lawsuit, but reneged on its defense offer when Tyson demanded that EMC retain counsel who did not have a conflict of interest with Tyson. EMC's withdrawing of its defense of Tyson breached its duty to Tyson as an additional insured party as well as EMC's contract with Routh made expressly for Tyson's benefit.

46. As a consequence of EMC's breach of its contractual duties, Tyson incurred reasonable and necessary defense costs in the Martinez lawsuit in excess of $200,000 that pursuant to the contract of insurance, should have been paid by EMC.

47. Tyson has made demand on EMC to reimburse Tyson for these defense costs, which EMC has refused.

## COUNT III

48. Tyson incorporates the foregoing Paragraph Nos. 1 through 47 as though fully restated herein.

49. Notwithstanding Tyson's status as an additional insured under Routh's policy of insurance, Routh had a duty under the Contract with Tyson to defend, indemnify and hold Tyson harmless from the Martinez claims. As such, Routh had the duty to defend Tyson in the Martinez lawsuit.

50. The express provisions of the Tyson-Routh Contract, namely Routh's indemnity and insurance requirements constituted an insured contract between Tyson and Routh whereby Routh was obligated to provide insurance to cover its duties to defend, indemnify and hold Tyson harmless.

51. The Tyson-Routh Contract comports with EMC's definition of an "insured contract" set out in the Routh policy, and therefore, the Tyson-Routh Contract fit within EMC's policy exception to the exclusion from coverage for contractual liability.

52. EMC initially admitted to its duty to defend Tyson as Routh's insured indemnitee. By its written communication to Tyson on August 31, 2012, EMC acknowledged that pursuant to the "Routh Enterprises' policy of insurance with EMC," EMC had a duty to Tyson to defend Tyson in the Martinez lawsuit.

53. EMC breached this duty to Tyson by reneging on its promise to assume Tyson's defense and refusing to pay for Tyson's fees and costs incurred in its defense.

54. As an insured indemnitee, Tyson stood in the same shoes as Routh, and had the right and authority to demand EMC's performance under the commercial insurance policy.

55. Because of EMC's breach of these duties, Tyson incurred reasonable and necessary defense costs in the Martinez lawsuit in excess of $200,000 that pursuant to the contract of insurance, should have been paid by EMC.

56. Tyson has made demand on EMC to reimburse Tyson for these defense costs, which EMC has refused.

**COUNT IV**

57. Tyson incorporates the foregoing Paragraph Nos. 1 through 56 as though fully restated herein.

58. EMC had the duty to deal with Tyson reasonably and with good faith with regard to the Martinez lawsuit.

59. As set forth above, EMC had the duty to assume and pay for Tyson's defense in the Martinez lawsuit due to Tyson's status as an additional insured, third-part beneficiary and insured indemnitee. EMC, having evaluated the Routh commercial insurance policy initially agreed, acknowledged and admitted to the defense it owed Tyson.

60. Having received EMC's commitment to assume its defense, Tyson expressed to EMC its concern that a conflict of interest existed between it and the insurance defense counsel EMC retained for the benefit of Routh. In particular, Routh's defense counsel had expressed on multiple occasions to Tyson's counsel in the Martinez lawsuit that they firmly believed that Tyson should file a motion for summary judgment under Oklahoma's Workers' Compensation Act asserting immunity under a claim that Tyson was the general contractor on the project. Tyson repeatedly rejected this strategy as it was not a general contractor for the work on its own facility - it was the owner. In Tyson's view, if EMC and Routh's defense counsel controlled Tyson's defense in the Martinez lawsuit, they would file a motion for summary judgment on Tyson's behalf asserting that Tyson was a general contractor, which was contrary to the facts and Tyson's business interests.

61. Tyson's position that Routh's defense counsel had a conflict of interest with Tyson was well founded and reasonable. Likewise, Tyson's request that EMC provide separate counsel for Tyson's defense was a reasonable and proper means for EMC to fulfill its duty to defend Tyson without harming its business interests in the process.

62. EMC subsequently withdrew its defense from Tyson without explanation or a reasonable basis. Thus, EMC's refusal to fulfill its duty to defend Tyson was in bad faith. As a direct result of EMC's breach of its duty of good faith and fair dealing, Tyson suffered economic

injury, including but not limited to, Tyson's reasonable and necessary defense costs in the Martinez lawsuit in excess of $200,000 that pursuant to the contract of insurance, should have been paid by EMC.

63. EMC's refusal to fulfill its duties to Tyson was reckless, intentional and malicious, thereby entitling Tyson to recover exemplary damages.

## IV. PRAYER FOR RELIEF

Tyson prays the Court grant it judgment against Routh and EMC, and award Tyson reimbursement for its fees and costs incurred in defending the Martinez lawsuit, consequential damages, prejudgment interest, exemplary damages (EMC only), and award Tyson its attorney's fees and costs incurred in prosecuting this action, together with any additional relief the Court deems just and appropriate.

Respectfully submitted,

**MCDANIEL ACORD, PLLC**

/s/ *A. Scott McDaniel*
A. Scott McDaniel, OBA #16460
Stacy L. Acord, OBA #18633
Miranda R. Russell, OBA #30240
9343 E. 95th Ct.
Tulsa, Oklahoma  74133
Telephone:  (918) 382-9200
Facsimile:   (918) 382-9282
**COUNSEL FOR PLAINTIFF TYSON FOODS, INC.**